UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Barden Culbreth, Executor
of the Estate of
William Charles Rowan

    v.                                    Civil No. 19-cv-31-JD
                                          Opinion No. 2020 DNH 116
Edmond I. Macri, Jr.


O R D E R

    Barden Culbreth, as the executor of the estate of William
Charles Rowan, is pursuing a wrongful death action against
Edmond L. Macri, Jr. that arises from a boating accident.
Culbreth moves to compel Macri to provide treatment records from
his psychiatrist.[1]  Macri objects and asserts that the records
are protected by the psychiatrist-patient privilege and that the
records are not relevant in the absence of an expert witness.
Culbreth contends that Macri has waived the privilege and that
the privileged information is essential.


Standard of Review

    "Parties may obtain discovery regarding any nonprivileged
matter that is relevant to any party's claim or defense and
proportional to the needs of the case." Fed. R. Civ. P.

---

[1] Although Culbreth included a title in the caption of his
motion "ORAL ARGUMENT REQUESTED," he provided no written
statement as to why oral argument on this motion would be of
assistance to the court.  LR 7.1(d).  Therefore, that request is
denied.

26(b)(1).  If a party objects to a discovery request, the
requesting party may move to compel and bears the initial burden
of showing the relevance of the information sought.  Fed. R.
Civ. P. 37(a)(3)(B); Aghamehdi v. OSRAM Sylvania, Inc., 2019 DNH
029, 2019 WL 919487, at *1 (D.N.H. Feb. 25, 2019).  When a party
objects to discovery based on privilege, that party bears the
burden of showing that the asserted privilege applies to protect
the information sought and has not been waived.  See XYZ Corp.
v. United States (In re Keeper of the Records), 348 F.3d 16, 22
(1st Cir. 2003).


                           Discussion

     Culbreth is seeking Macri's treatment records that relate
to an allegedly severe condition of stress and anxiety in the
days just before the boating accident in which Rowan was killed.
Through other discovery, Culbreth has learned that Macri
experienced anxiety or a panic attack and was being treated by a
psychiatrist.  Culbreth contends that Macri's mental health and
condition are relevant to his decision and ability to operate
the boat at the time of the accident.

     Macri contends that Culbreth has exaggerated the nature of
his anxiety before the accident.  He argues that the anxiety he
experienced, which required an increase in the dosage of his
medication, was related to travel and was not a factor in the

                               2

accident.  Macri contends that the psychiatrist-patient privilege protects his medical records from discovery, that he has not waived the privilege, and that the records are not essential or even relevant in the case.  Macri further contends that because Culbreth has not disclosed an expert witness who could give an opinion about the effect of the medications he was taking, that information is not relevant.  Macri asserts that Culbreth is engaging in a fishing expedition.

### A.  Relevance

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."  Fed. R. Evid. 401.  In the amended complaint, Culbreth alleges that Macri was negligent in operating the boat because he "fail[ed] to adequately familiarize himself with the boat's controls prior to operating it, [he failed] to operate the boat in a safe and controlled manner, and [he collided] with the concrete wall."  Am. Compl. ¶ 18.  Culbreth represents that one of his theories of Macri's liability is that he was not medically or emotionally fit to operate the boat.  Culbreth intends to use that theory to counter Macri's defense that Rowan's death was a pure accident without any negligence on his part.

In support, Culbreth cites Macri's son's statement to marine patrol officers after the accident that his father had had a panic attack days before the accident.  Culbreth also cites Sandra Macri's deposition testimony about Macri's mental health but most of the cited pages were not included in the exhibit that provided excerpts from her deposition.  On the included page, Sandra Macri testified that her husband had had anxiety when traveling, although not to the extent he experienced during the trip when the boating accident occurred.

Macri testified during his deposition that he felt a little uneasy, not relaxed, which was something he had experienced before due to being away from home.  He testified that his anti-anxiety medication dosage was doubled during the trip and before the boating accident because he felt uneasy.  He also testified about not wanting to drive the boat during the trip.

Arguably, Macri's mental health and emotional state prior to the boat accident are relevant to whether he acted negligently in deciding to operate the boat.  The relevance of that information, however, would depend on what causal relationship could be shown between any diagnoses or medication and the actions that resulted in the accident.[2]

---

[2] Culbreth also argues that Macri has created a misimpression that his symptoms were mild, mere uneasiness, and that the records would be relevant to rebut that impression. Relevance, however, still requires a causal relationship between the symptoms of the condition or medication and Macri's actions.

As Macri points out, Culbreth lacks an expert witness to testify about the causal connections between any mental condition or medication and the accident.  The deadline for expert disclosure has passed.  Macri contends that no causal relationship can be determined based on common knowledge without the assistance of medical expertise.  In response, Culbreth argues that the information could be within the common knowledge of the jury and that the other circumstances could justify a late disclosure of an expert witness.

Assuming that Macri's treatment records would have some relevance to Culbreth's theory of liability, the court moves on to consider the effect of the asserted psychotherapist-patient privilege.

B.  <u>Psychiatrist-Patient Privilege</u>[3]

The parties agree that New Hampshire law governs the privilege asserted in this case.  New Hampshire recognizes both a physician-patient privilege, RSA 329:26, and a mental health practitioner-patient privilege, RSA 330:A-32, and both are cited

---

[3] Although Culbreth asserts that Macri has waived the marital privilege, it does not appear that a marital privilege has been claimed.  To the extent Culbreth intended to argue that Macri waived the psychiatrist-patient privilege by discussing health matters with his wife and then waiving the marital privilege, that theory has not been sufficiently developed to provide support for waiver of the psychiatrist-patient privilege.  Under the circumstances presented, Macri's discussions with his wife about his health or his mental state did not waive the psychiatrist-patient privilege.

by Macri in support of his objection.  The records at issue are those generated by Macri's psychiatrist, Dr. Jacobs.

A psychiatrist is not one of the mental health practitioners listed in RSA 330-A:2, VII.  Instead, a psychiatrist appears to be included in the practice described in RSA 329:1 and covered by RSA 329:26.  Therefore, it would appear that the protection provided in RSA 329:26 governs the privilege asserted in this case.  But see Desclos v. S. N.H. Med. Ctr., 153 N.H. 607, 610 (2006) (applying RSA 330:32 as "psychotherapist-patient privilege" to plaintiff's psychiatric and psychological records).  Because both privileges provide protection on the same basis as the attorney-client privilege under New Hampshire law, it is not necessary in this case to distinguish between them.[4]

---

[4] RSA 329:26 provides:
  The confidential relations and communications between a physician or surgeon licensed under provisions of this chapter and the patient of such physician or surgeon are placed on the same basis as those provided by law between attorney and client, and, except as otherwise provided by law, no such physician or surgeon shall be required to disclose such privileged communications. Confidential relations and communications between a patient and any person working under the supervision of a physician or surgeon that are customary and necessary for diagnosis and treatment are privileged to the same extent as though those relations or communications were with such supervising physician or surgeon.

RSA 330-A:32 provides:
  The confidential relations and communications between [a licensed mental health practitioner] and

Privileged information may be disclosed if the patient has
waived the privilege or if "the court orders a piercing of the
privilege." Desclos, 153 N.H. at 611.  While the party
asserting the privilege bears the burden of showing that no
waiver has occurred, the party asking the court to pierce the
privilege bears the burden of showing that the privileged
information is essential.  Zibolis-Sekella v. Ruehrwein, 2013
DNH 96, 2013 WL 3776477, at *3 (D.N.H. July 17, 2013).

    1.  Waiver

The psychiatrist-patient privilege may be waived by the
patient "by putting the confidential communications at issue by
injecting the privileged material into the case." Id. at 612.
If that has occurred and the privileged information "is actually
required for resolution of the issue, then the privilege-holder
must either waive the privilege as to that information or be
prevented from using the privileged information to establish the
elements of the case."  Id.

Macri contends that he has not injected any issue about his
psychiatric treatment into this case.  He states that he does
not dispute that he was taking anxiety medication at the time of

---

such licensee's client are placed on the same basis as
those provided by law between attorney and client, and
nothing in this chapter shall be construed to require
any such privileged communications to be disclosed,
unless such disclosure is required by a court order.

the accident or that he requested an increased dosage before the accident.  He also does not claim that his anxiety or his medication had anything to do with the accident.  Macri argues that to the contrary Culbreth is pursuing the privileged information for purposes of proving liability.

Culbreth asserts that protecting Macri's medical records would be unfair as Macri is likely to raise a defense later in the case that he was not negligent because he sought treatment for anxiety.  He contends that the court "should not permit Defendant to offensively use the fact that he received treatment, while concurrently shielding his symptoms and [his psychiatrist's] impressions or concerns."

Because Macri is not now asserting any defense based on his medical or psychiatric records, he has not injected privileged matters into this case.  He chooses not to waive the privilege that applies to his confidential records.  Therefore, the privilege protects the information, and he will not be allowed to use any of the privileged information to establish any element in the case.

2.  Essential

Culbreth contends that the court should nevertheless pierce the privilege because the information he seeks is essential to his case.  He argues that he needs the psychiatric records to rebut the defense that Macri did not act negligently.  He also

argues that the records are necessary to correct the misimpression Macri has created that his anxiety was not serious.

As the record demonstrates, Culbreth has ample evidence about Macri's anxiety and the treatment he received for that condition.  He has not shown that the privileged information is essential.  Therefore, he has not carried his burden to support piercing the privilege here.


### Conclusion

For the foregoing reasons, the plaintiff's motion to compel disclosure of confidential information (document no. 40) is denied.

SO ORDERED.

Joseph A. DiClerico, Jr.
United States District Judge

July 9, 2020

cc:  Counsel of record.